UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Andra L. Nicholson,

Plaintiff,

v.

Timothy O'Dell, Warden, Corrections Corporation of America; and John E. Litscher,

Defendants.

Civil No. 02-361 (JMR/FLN)

**REPORT AND RECOMMENDATION**

**THIS MATTER** is now before the Court on: (1) Plaintiff's Motions to Dismiss Any Motion by Defendants to Transfer Civil Complaint [#3], to Produce and Discovery [#4], for Injunction Order [#5], and for Summary Judgment [#17]; and (2) Defendants' Motions for Dismissal [## 8, 12 & 15]. The matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1. As discussed more fully below, the Court will recommend that Defendants' motions be granted because: (1) Plaintiff has failed to state a claim for which relief can be granted; and (2) Plaintiff's claims cannot be entertained at this time because he did not exhaust his available administrative remedies, as required by 42 U.S.C. § 1997e(a).

## I. BACKGROUND

Plaintiff, an inmate at the Prairie Correctional Facility ("PCF") in Appleton, Minnesota, is seeking relief under 42 U.S.C. § 1983 for alleged violations of his federal constitutional rights. (See [#1]) The PCF is owned and operated by the Corrections Corporation of America ("CCA"), a private entity. Plaintiff seeks an award of $3 million for himself, plus $30,000 to each Wisconsin inmate

FILED AUG 08 2002
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD.
DEPUTY CLERK

housed at PCF.[1] Plaintiff also filed two additional documents purporting to either support or supplement his Complaint. (See Pl.'s Mem. in Supp. of Compl. under 42 U.S.C. § 1983 and Federal R.I.C.O. Statutes [#2]; Brief Filed by Pl. regarding Complaint [#6].) Plaintiff's initial Complaint alleges that:

1. CCA/PCF is without legislative authority enacted by a legislature (MINNESOTA) granting CCA/PCF authority to impose disciplinary sanctions on non-jurisdictional detainees;
2. CCA/PCF lacks constitutional, statutory, and administrative rule of a legislative construction in the area of discipline;
3. CCA/PCF is without DOC legislative construction of a statute;
4. Minnesota's Court Circuit lacks subject matter jurisdiction to provide a remedy for non-jurisdictional detainees (Wisconsin) when Wisconsin detainees want to challenge discipline reports in this jurisdiction, with an extraordinary writ or writ of certiorari. The State (Wisconsin) or Federal (Gov.) has not conveyed statutory authority to CCA/PCF to discipline;
5. CCA/PCF's lack of legislative authority poses a due process and liberty interest violation to Petitioner;

Compl. at IV [#1]. The Second Complaint restates the aforementioned claims and also alleges a violation of the Racketeer Influenced and Corrupt Organizations Act ("R.I.C.O."). Plaintiff's "combined Compliant" is convoluted, confusing and the additional documents fail to clarify his claims or provide much guidance.

Despite this confusion, per Plaintiff's subsequent submissions, it appears that he is essentially alleging that: (1) the State of Wisconsin relinquished its jurisdiction over him by transferring him to the PCF; (2) his transfer to the PCF, a private prison, in Minnesota somehow violated his due process rights; (3) PCF lacks the authority to discipline or classify the Wisconsin prisoners it houses

---

[1] There are two documents purporting to be the Complaint. The first document is a five-page form document which Plaintiff has completed and signed. The second document is a six-page unsigned document bearing the caption "Complaint under 42 U.S.C. § 1983". (See [#1].) This latter Complaint also appears to assert a R.I.C.O. claim.

because the disciplinary code at the PCF has not been properly promulgated through the Wisconsin State Legislature; (4) his rights under the Fourth, Fifth, Eighth and Ninth Amendments to the United States Constitution have somehow been violated by virtue of the fact that as a Wisconsin prisoner, he has been transferred to the PCF, a private prison facility, has had his security classification set by the PCF and is subject to the PCF's disciplinary code; and (5) Defendants have somehow violated the R.I.C.O. statute by contracting to house Wisconsin inmates at the PCF and allowing the PCF to set security classifications and impose disciplinary rules on those prisoners. (See Pl.'s Decl. as to Why Defendant Litscher's Motion to Dismiss Should Not be Granted [#22]; Pl.'s Response to Def.s Odell and Corrections Corporation of America, Inc.'s Motion to Dismiss and Cross Motion for Summary Judgment [#26].)

Simply put, Plaintiff appears to be challenging: (1) the State of Wisconsin's authority to transfer him and other Wisconsin inmates to the PCF, a private prison facility in another state; and (2) the PCF's authority to impose disciplinary rules, including setting security classifications, on those prisoners.

## II. STANDARD OF REVIEW

In the case of a defendant's Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief may be granted, the court is limited to considering the allegations of the complaint,[2] must take those allegations as true, and must view the complaint in the light most favorable to the plaintiff. See Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Rabushka, ex rel. U.S. v. Crane Co., 122

---

[2] Only facts alleged in a complaint and material attached to the complaint, which form part of the pleadings, are properly considered on a motion to dismiss. See County of St. Charles, Mo. v. Missouri Family Health Council, 107 F.3d 682, 684 n.3 (8th Cir. 1997). The Court will not consider any documents outside the pleadings and chooses not to convert this action into one for summary judgment.

F.3d 559 (8th Cir. 1997); Ring v. First Interstate Mortg., Inc., 984 F.2d 924 (8th Cir. 1993); Klett v. Pim, 965 F.2d 587, 589 (8th Cir. 1992); U.S. v. Aceto Agric. Chemicals Corp., 872 F.2d 1373, 1376 (8th Cir. 1989); Toombs v. Bell, 798 F.2d 297, 298 (8th Cir. 1986). The court should not grant a motion to dismiss merely because the complaint does not state with precision every element of the offense necessary for recovery. See 5 Wright & Miller, Federal Practice and Procedure: Civil, §§ 1216 at 120 (1969). A complaint is sufficient if it contains "allegations from which an inference can be drawn that evidence on . . . material points will be introduced at trial." Id. at 122-23. Moreover, a court should not dismiss a complaint unless it "appears beyond a reasonable doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley, 355 U.S. at 45-46. Thus, a motion to dismiss is likely to be granted "only in the unusual case in which a plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief." Fusco v. Xerox Corp., 676 F.2d 332, 334 (8th Cir. 1982); see also Palmer v. Tracor, Inc., 856 F.2d 1131 (8th Cir. 1988); Baxley-DeLamar Monuments Inc. v. American Cemetery Ass'n, 843 F.2d 1154 (8th Cir. 1988).

A court should afford a *pro se* litigant the benefit of the doubt in construing his or her pleadings and factual averments. See Malek v. Camp, 822 F.2d 812 (8th Cir. 1987); Miller v. Solem, 728 F.2d 1020 (8th Cir. 1984), cert. denied, 469 U.S. 841 (1984). *Pro se* plaintiffs must, however, meet the same standards as litigants represented by counsel to survive a summary judgment motion or a motion to dismiss, that is, "the complaint must allege facts which, if true, state a claim as a matter of law." Martin v. Aubuchon, 623 F.2d 1282, 1286 (8th Cir. 1980); Quam v. Minnehaha County Jail, 821 F.2d 522 (8th Cir. 1987); see also, Martin v. Sargent, 780 F.2d 1334, 1337 (1985) ("[a]lthough it is to be liberally construed, a *pro se* complaint must contain specific facts supporting

its conclusions").

## III. ANALYSIS

### A. All of Plaintiff's Challenges to His Transfer to the PCF Should be Dismissed

With respect to any claims arising out of Plaintiff's transfer to Minnesota, Defendants bring their motions for dismissal on the grounds that Plaintiff failed to state a claim for which relief can be granted. Specifically Defendants contend that: (1) the State of Wisconsin did not deliberately or voluntarily relinquish its authority over him; (2) it is well settled law that an inmate has no justifiable expectation that he will be incarcerated in a particular prison within a state or in any particular state; and (3) and courts have upheld transfers of inmates to private out-of-state facilities.

We agree. First, Wisconsin's jurisdiction did not end when it transferred Plaintiff to Minnesota, as Wisconsin did not deliberately and voluntarily relinquish its authority over him. See Abordo v. O'Dell, No. 01-2296, 2001 WL 1529746 (8th Cir., Dec. 4, 2001); Evans v. Holm, 114 F.Supp.2d 706, 711 (W.D.Tenn. 2000) ("It is a popular myth among prisoners that a state's authority over a prisoner ends at the state's geographical border."); Blango v. Thornburgh, 942 F.2d 1487, 1491 (10th Cir. 1991) (District of Columbia did not waive jurisdiction over habeas petitioner by transferring him to federal prison in Kansas). Second, "[j]ust as an inmate has no justifiable expectation that he will be incarcerated in any particular prison within a State, he has no justifiable expectation that he will be incarcerated in any particular State." Abordo, 2001 WL 1529746 at *2 (citing Olim v. Wakinekona, 461 U.S. 238, 245 (1983)). Third, our Court of Appeals has upheld transfers of inmates to private out-of-state facilities. See id; Montez v. McKinna, 208 F.3d 862, 865-66 (10th Cir. 2000) (rejecting challenge to transfer as "unsupported by law"). Finally, any notion that the Wisconsin Department of Corrections cannot transfer a prisoner out of state without

his or her consent has been thoroughly repudiated by the Wisconsin Court of Appeals. See Evers v. Sullivan, No. 00-0127, 2000 WL 705340 (Wis. Ct. App., June 1, 2000).

Based on the foregoing and in viewing the evidence in the light most favorable to the non-moving party, it appears beyond a reasonable doubt that Plaintiff can prove no set of facts in support of his claims which would entitle him to relief. Consequently, this Court will recommend that all of Plaintiff's claims arising out of his transfer to the PCF be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

**B. Plaintiff's Challenges to the Discipline Imposed on Wisconsin Prisoners at the PCF Should be Dismissed**

Defendants also seek dismissal of Plaintiff's claims regarding the PCF disciplinary code and security classifications imposed on Wisconsin prisoners housed therein. Defendants seek dismissal on the grounds that Plaintiff: (1) failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a); (2) lacks standing to litigate this issue since he has not alleged that he was personally disciplined in any way and has suffered no damages or injury; and (3) failed to state a claim for which relief can be granted because there is no statute requiring the Wisconsin Legislature to approve the PCF's rules on prisoner discipline and the Wisconsin Department of Corrections has the authority to delegate the assignment of security classifications to private correctional facilities housing Wisconsin prisoners. Because we find that Plaintiff failed to exhaust his administrative remedies as to any aspect of his claims regarding the prison discipline imposed on Wisconsin prisoners, we need only address that issue.

42 U.S.C. § 1997e(a) was enacted in 1996 as part of the PLRA. § 1997e(a) provides that:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other

correctional facility until such administrative remedies as are available are exhausted.

This statute establishes, unequivocally, that prisoners must exhaust their available administrative remedies before pursuing a federal court action based on the conditions of confinement. See Porter v. Nussle, 534 U.S. 516 (2002); Booth v. Churner, 532 U.S. 731 (2001); McAlphin v. Morgan, 216 F.3d 680, 682 (8th Cir. 2000); Massey v. Wheeler, 221 F.3d 1030, 1034 (7th Cir. 2000). Defendants contend that Plaintiff failed to exhaust his administrative remedies as required by 42 U.S.C. § 1997e(a); therefore, this Court must consider how the exhaustion requirement of § 1997e(a) may be applicable here. See Perez v. Wisconsin Dept. of Corrections, 182 F.3d 532 (7th Cir. 1999) (the exhaustion requirement established by § 1997e(a) "can function properly only if the judge resolves disputes about its application before turning to any other issue in the suit").

**1. Applicability of § 1997e(a) to Plaintiff's Challenges to the Discipline Imposed on Wisconsin Prisoners at the PCF**

The exhaustion requirement prescribed by § 1997e(a) does not apply to every prisoner action; it applies only to actions brought with respect to prison conditions under 42 U.S.C. § 1983 or other federal laws, by a prisoner confined in any jail, prison or other correctional facility. There seems to be no doubt or dispute, however, as to whether § 1997e(a) is applicable to the claims that Plaintiff is seeking to litigate here. He was (and still is) confined in a correctional facility. The caption of his Complaint explicitly states that he is seeking relief under 42 U.S.C. § 1983, and he obviously is contending that Defendants should be held liable for violating his rights under federal law and/or the Constitution. It also is clear that his claims, which involve disciplinary procedures and security classifications are "brought with respect to prison conditions." See Brown v. Toombs, 139 F.3d 1102, 1103 (6th Cir.) cert. denied, 119 S.Ct. 88 (1998) (applying § 1997e(a) where prisoner's claims

included denial of access to the courts, and interference with legal mail, among others); Alexander v. Hawk, 159 F.3d 1321, 1322 (11th Cir. 1998). Thus, the Court concludes that § 1997e(a) is applicable to the claims that Plaintiff is attempting to present here.

**2. Purpose of the Exhaustion Requirement**

"Congress intended section 1997e(a) to 'curtail the ability of prisoners to bring frivolous and malicious lawsuits by forcing prisoners to exhaust all administrative remedies before bringing suit in Federal court.'" Alexander, 159 F.3d at 1324. The Eighth Circuit Court of Appeals has identified at least four valuable objectives that are generally promoted by an exhaustion requirement. First, it helps to ensure a more complete development of the factual record before the matter is brought into court. Second, it gives the court the benefit of whatever special knowledge and experience the administrative agency, (in this case the prison), might have to offer. Third, it acknowledges the autonomy and authority of administrative agencies (and prison officials). Finally, to the extent that claims can be resolved at the administrative level, an exhaustion requirement promotes judicial economy. See Mason v. Ciccone, 531 F.2d 867, 870 (8th Cir. 1976); McCarthy v. Madigan, 503 U.S. 140, 145 (1992). When a litigant fails to satisfy an exhaustion of administrative remedies requirement, he deprives the judicial process of these valuable benefits. The Court bears this in mind when examining the applicability of § 1997e(a) in this case.

**3. Administrative Remedies Available at PCF**

Plaintiff's evidentiary submissions show that there were administrative remedy procedures in place at PCF at the time of the events giving rise to Plaintiff's present claims. Plaintiff acknowledges that he was aware of such procedures, however, he argues "that a corporation investigating itself does not provide non-biased decisions." Pl.'s Response to Def.s Odell and

Corrections Corporation of America, Inc.'s Motion to Dismiss and Cross Motion for Summary Judgment [#26].[3]

**4. Plaintiff's Pursuit of Administrative Remedies**

To satisfy requirements of § 1997e(a), a prisoner "must allege . . . that [he] . . . exhausted all available . . . administrative remedies" and "should attach to his § 1983 complaint the administrative decision, if it is available, showing the [final] administrative disposition of his complaint." Brown, 139 F.3d at 1104. In the instant case, the grievance form/administrative decision attached to Plaintiff's form Complaint was merely a request for information that was resolved. It does not mention any of his current claims. On March 11, 2002, Plaintiff filed additional documents to supplement his Complaint. (See [#6]). One of these documents was another grievance form/administrative decision addressing Plaintiff's claims; however, it was presented to the Facility

[3] Having addressed other § 1983 cases, this Court is familiar with the administrative remedy process at the PCF. This process can be summarized as follows: the aggrieved inmate must first attempt to resolve his concerns by raising them informally with an appropriate staff member. If the problem cannot be resolved through informal discussions, then the inmate must initiate a formal grievance procedure no later than 7 days of the alleged incident. The time for filing may begin from the date the problem or incident became known to the inmate resident if the problem was such that the inmate did not or could not have known about it on the date of occurrence. The Facility Grievance Officer shall, within 15 days of receipt of an inmate/resident grievance, conduct an investigation of the grievance and render a decision. If the inmate's problem is not resolved, he may appeal to the Warden/Administrator within 5 days of receiving the Facility Grievance Officer's decision. The Warden/Administrator will render a written decision within 15 days of receipt of the inmate's appeal.

The grievance procedures are applicable to a broad range of complaints, including but not limited to, complaints by inmates regarding policies and conditions within PCF that affect them personally, as well as actions by employees and inmates, and incidents occurring within the facility that affect them personally. The procedures prescribe certain time limits within which inmates must act and prison officials must respond. There also are special provisions governing emergency situations. The remedies available under the grievance procedures are broadly defined as a meaningful response, action, restitution or redress.

Grievance Officer on March 4, 2002, at least one month ***after*** Plaintiff filed the instant lawsuit. (See [#6].) None of these grievance forms show the final administrative disposition of his grievance.

Here, Plaintiff did not initiate the formal grievance process with respect to any aspect of his claims, did not pursue any available administrative remedies, and certainly did not exhaust his administrative remedies by following that process through to completion ***at the time he filed the instant action***. At most, it appears that Plaintiff took the preliminary step of presenting his complaint to the Facility Grievance Officer on March 4, 2002, at least one month ***after*** he filed the instant lawsuit. (See [#6].) Furthermore, he failed to attach the required documentation purporting to show completion of any part of the process to his Complaint. See McAlphin v. Morgan, 216 F.3d 680, 682 (8th Cir. 2000). The record clearly shows that Plaintiff did not exhaust his administrative remedies with respect to any aspect of his claims regarding the discipline imposed on Wisconsin prisoners at the PCF that he is attempting to pursue in the present lawsuit. Thus, the Court must consider whether Plaintiff should, for any reason, be excused from the exhaustion requirement of § 1997e(a).

**5. Plaintiff's Excuses for Non-exhaustion**

Plaintiff's argues that he should be exempted from the exhaustion requirement because "a corporation investigating itself does not provide non-biased decisions" and there are no administrative remedies available to prisoners confined in out-of-state private prisons. This Court is not persuaded by this argument and we are unaware of any legal authority suggesting that out-of-state inmates in private institutions are precluded from employing available administrative remedies. Accordingly, Plaintiff's offered excuses for failing to exhaust his administrative remedies will not suffice.

For the reasons discussed above, the Court finds that Plaintiff did not exhaust the administrative remedies that were available to him at PCF, and that he cannot be excused from the exhaustion requirement set forth at § 1997e(a). He is therefore barred by § 1997e(a) from bringing his present claims regarding the PCF's disciplinary code and security classifications into federal court.

**C. Plaintiff's R.I.C.O. Claim Should be Dismissed**

Plaintiff contends that by contracting to house its prisoners at the PCF in Minnesota and allowing the PCF to set security classifications for and impose disciplinary rules on Wisconsin prisoners, Defendants have somehow violated the R.I.C.O. We find Plaintiff's R.I.C.O. claim to be without merit. Plaintiff has not alleged any acts of racketeering activity, much less a pattern of such activity as contemplated under R.I.C.O., 18 U.S.C. § 1961.

In viewing the evidence in the light most favorable to the non-moving party and based on the foregoing, it appears beyond a reasonable doubt that Plaintiff can prove no set of facts in support of his claim which would entitle him to relief. As such, we will recommend that this claim be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

## IV. RECOMMENDATION

Based upon the above, and upon all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Plaintiff's Motions to Dismiss Any Motion by Defendants to Transfer Civil Complaint [#3], to Produce and Discovery [#4], for Injunction Order [#5], and for Summary Judgment [#17] be **DENIED AS MOOT**;

2. Defendants' Motions for Dismissal [## 8, 12 & 15] be **GRANTED** as follows:

   a. Plaintiff's claims arising out of his transfer to the PCF should be **DISMISSED WITH PREJUDICE** pursuant to Fed. R. Civ. P. 12(b)(6);

   b. Plaintiff's claims regarding any aspect of the PCF's disciplinary code and security classifications imposed on Wisconsin prisoners housed at PCF should be **DISMISSED WITHOUT PREJUDICE** for failure to exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a);[4]

---

[4] Because Plaintiff did not exhaust his administrative remedies with respect to any aspect of his claims regarding the disciplinary code and security classifications imposed on Wisconsin prisoners housed at the PCF, we are without authority to review the substantive merits of his claims.

That said, we note that it is well established constitutional law that classifications of inmates do not implicate any constitutional rights. See Sandin v. Conner, 515 U.S. 472 (1995). Furthermore, any notion that the Wisconsin Department of Corrections ("WDOC") cannot delegate to employees at a private correctional facility in another state, the responsibility of conducting reviews and making recommendations on the security classifications and program assignments of Wisconsin prisoners incarcerated in that facility has been thoroughly repudiated by the Wisconsin Court of Appeals. See Treat v. Puckett, 643 N.W.2d 515 (Wis. Ct. App. 2002).

With respect to whether the PCF has the authority to discipline Wisconsin Prisoners housed therein, Wis. Stat. § 301.21(2m) governs the WDOC's authority to delegate to PCF employees the authority to discipline Wisconsin prisoners. Specifically, Wis. Stat. § 301.21(2m)(b) provides that "[w]hile in an institution in another state covered by a contract under this subsection, Wisconsin prisoners at the PCF are subject to all provisions of law and regulations concerning the confinement of persons in that institution under the laws of that state." Under Minnesota law, private correctional facilities like the PCF may impose disciplinary codes

c. Plaintiff's R.I.C.O. claim should be **DISMISSED WITH PREJUDICE** pursuant to Fed. R. Civ. P. 12(b)(6).

Dated: Aug 8, 2002

FRANKLIN L. NOEL
UNITED STATES MAGISTRATE JUDGE

Pursuant to Local Rule 72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, within ten days of service of this Report and Recommendation, written objections which specifically identify the portions of the proposed findings, recommendations or report to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within ten days after service of the objections. All briefs filed under this rule shall be limited to ten pages. A judge shall make a de novo determination of those portions to which objection is made.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Circuit Court of Appeals.

---

on prisoner's housed therein. See Minn. Stat. §§ 241.021 & Minn. Stat. 243.52. Consequently, since Wisconsin prisoners are subject to all provisions of Minnesota law concerning the confinement of persons at the PCF, it appears that the PCF may impose disciplinary codes on Wisconsin prisoners housed therein without violating any Wisconsin or Minnesota law.